UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,                  CRIMINAL NO. 03-80406

-vs-                                HON. GERALD E. ROSEN

D-14 ALI NAJIB BERJAOUI,

               Defendant.

_____/

## THE UNITED STATES' COMBINED BRIEF AND RESPONSE TO DEFENDANT BERJAOUI'S MOTIONS TO DISMISS THE INDICTMENT, FOR A BILL OF PARTICULARS, TO STRIKE SURPLUSAGE AND FOR DISCOVERY

### Introduction

Defendant Ali Berjaoui has been charged, along with eighteen other individuals, with Conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act (RICO).  18 U.S.C. § 1962(d).  To date, four of the eighteen defendants have pleaded guilty and are awaiting sentencing.  Nine of the defendants  have not yet been apprehended.  The Court has set a plea cut-off date of January 30, 2007 and trial for March 20, 2007.  All of the defendants currently awaiting trial are free on bond. Defendant Berjaoui has filed a number of pretrial motions.  The government's response follows.

## Discussion

A. <u>Motion to Dismiss the Indictment</u>.

Defendant Berjaoui  moves to dismiss the indictment, claiming that: 1) the Indictment does not allege an enterprise separate and distinct from the pattern of racketeering activity; 2) defendant Berjaoui is not alleged to have operated or managed the enterprise; and 3) defendant Berjaoui was conducting his own affairs, not that of the enterprise.  (Motion to Dismiss at 1).  Berjaoui completely misapprehends RICO jurisprudence in this circuit, and fails to distinguish between a violation of RICO ( 18 U.S.C. § 1962(c)), and conspiracy to violate RICO (18 U.S.C. § 1962(d)).

Title 18, United States Code, Section 1962(c) provides as follows:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Section 1962(d) makes it a crime "to conspire to violate" subsection c.

In order to establish a violation of section 1962(c), the government must prove "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." <u>Salinas v. United States</u>, 522 U.S. 52, 62 (1997).  A pattern of racketeering activity means "at least two acts of racketeering activity."  18 U.S.C. § 1961(5).  Racketeering activity includes, relevant to this case, (1) violations of 18 U.S.C. § 2342(contraband

2

cigarette trafficking); (2) violations of 18 U.S.C. § 2315(possession of counterfeit tax stamps); (3) violations of 18 U.S.C. § 2320 (trafficking in counterfeit goods); (4) violations of 18 U.S.C. §§ 2314 & 2315 (possession and interstate transportation of stolen property); and (5) violations of 18 U.S.C. § 1956(money laundering).   18 U.S.C. § 1961(1).

The definition of an enterprise under section 1961(4) includes "an association in fact."  In this regard, the government must prove that "a group of persons associated together for a common purpose of engaging in a course of conduct."  United States v. Turkette, 452 U.S. 576, 583 (1981).

Berjaoui incorrectly cites Turkette for the proposition that the enterprise must exist separate and distinct from the racketeering activity.  (Motion to Dismiss at 3). Berjaoui fails to cite the Sixth Circuit's interpretation of Turkette, however, which reaches the opposite conclusion.  In the Sixth Circuit, the existence of the enterprise may be inferred from the evidence establishing the pattern of racketeering activity. "Although 'enterprise' and 'pattern of racketeering activity' are separate elements, they may be proved by the same evidence."  United States v. Qaoud, 777 F.2d 1105, 1115 (6th Cir. 1985)(rejecting the argument that "there must be proof of an enterprise distinct from proof of a pattern of racketeering" in RICO cases)(following United States v. Mazzei, 700 F.2d 85 (2d Cir. 1983); United States v. Cagnina, 697 F.2d 915,

920-21 (11th Cir. 1983); United States v. Bagnariol, 665 F.2d 877, 890-91 (9th Cir. 1981); United States v. Griffin, 660 F.2d 996, 1001 (4th Cir. 1981); United States v. Diecidue, 603 F.2d 535, 545 (5th Cir. 1979)).  This reading of Turkette has been reaffirmed as recently as nine months ago.  United States v. Johnson, 440 F.3d 832, 840-41 (6th Cir. 2006).

Berjaoui also contends, incorrectly, that the government must allege and prove that he participated in the operation or management of the enterprise, citing Reves v. Ernst & Young, 507 U.S. 170 (1993)(a defendant is not liable for a substantive RICO violation unless he "participates in the operation or management of the enterprise itself").  What Berjaoui fails to recognize, however, is that he is charged with conspiracy to violate RICO (section 1962(d)), not a substantive violation of RICO (section 1962(c)).

With respect to a conspiracy to violate RICO, the government must show that "a conspiracy existed and then [that] the defendant was a member of that conspiracy." United States v. Hughes, 895 F.2d 1135, 1141 (6th Cir. 1990).  A particular defendant's membership in the conspiracy may be inferred from that person's actions. Id.  "'Seemingly independent transactions may be revealed as parts of a single conspiracy by their place in a pattern of regularized activity involving a significant continuity of membership.'" Id. at 1140 (quoting United States v. Grassi, 616 F.2d

1295, 1303 (5th Cir. 1980).  Each "defendant need not personally agree to commit two predicate acts; rather, he need only 'kn[ow] about and agree [ ] to facilitate the scheme.'"  United States v. Tocco, 200 F.3d 401, 425 (6th Cir. 2000)(quoting United States v. Salinas, 522 U.S. at 66).  Moreover, a defendant need not know about every member and activity of the enterprise; "he need only know 'the general nature of the enterprise and that the enterprise extends beyond his control.'" Tocco, 200 F.3d at 425 (quoting United States v. Eufrasio, 935 F.2d 553, 557 n.29 (3rd Cir. 1991)).  As the Supreme Court explained in Salinas:

> There is no requirement of some overt act or specific act in the statute before us, unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an 'act to effect the object of the conspiracy.'  The RICO conspiracy provision, then, is even more comprehensive than the general conspiracy offense in § 371.

Salinas, 522 U.S. at 63.  "[O]ne's agreement must be to knowingly facilitate the activities of the operators or managers to whom subsection (c) applies.  One must knowingly agree to perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner."  Brouwer v. Raffensperger, Hughes & Co., 199 F.3d 961, 967 (7th Cir. 2000).  Thus, the government is not required to allege or prove that defendant Berjaoui participated in the operation or management of the enterprise, only that he conspired with others who did so.

Finally, Berjaoui's claim that his illegal actions were his own personal affairs and not those of the enterprise is a factual dispute which can only be resolved by the jury at trial.

B.  <u>Bill of Particulars</u>

Berjaoui also moves for a bill of particulars.  The Sixth Circuit has held that there are three purposes for a bill of particulars: 1) to ensure that a defendant understands the nature of the charges against him; 2) to minimize the danger of unfair surprise; and 3) to enable the defendant to plead double jeopardy if he is later charged with the same crime.  <u>United States v. Birmley</u>, 529 F.2d 103, 108 (6th Cir. 1976).  A bill of particulars, however, may not be used "as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial."  <u>United States v. Salisbury</u>, 983 F.2d 1369, 1375 (6th Cir. 1993).  This is the exact ground upon which Ali Berjaoui seeks a bill of particulars.

Defendant Berjaoui does not even acknowledge, let alone attempt to establish, the legitimate purposes for a bill of particulars as defined by the Sixth Circuit.  He cites not a single authority for his request for a bill of particulars.   Rather, Berjaoui frames his motion as though he were submitting interrogatories to the government, a mechanism completely foreign to federal criminal prosecutions. Defendant Berjaoui's motion for a bill of particulars also appears to be a continuation of his motion to

dismiss the indictment, as he continually references his erroneous (see RICO discussion above) interpretation of the elements required for a RICO violation.[1]

The government's proofs will in no way be a surprise to Berjaoui.  His exact role in the conspiracy (a distributor of contraband cigarettes) has already been set forth in the extensive 37 page Indictment as well as the dates of the conspiracy (May 1996 through April 14, 2004) and the vast majority of its participants.  Furthermore, as the Indictment clearly sets forth, the contraband cigarette trafficking slowed and eventually ceased after Michigan imposed a tax stamp in mid-1998.  There are few if any overt acts concerning contraband cigarette possession or sales after 1999, and none referencing Berjaoui.  Moreover, defendant Berjaoui is not alleged to have participated in the counterfeit tax stamp violations, or in any of the non-cigarette violations perpetrated by the conspiracy.  He can thus safely assume that the evidence against him will be testimonial, and will describe him as a trafficker of contraband cigarettes pursuant to an ongoing business relationship with other conspirators between 1996 and 1999.  Of course, the government will need to show the full scope of the conspiracy to place Mr. Berjaoui's conduct in context.

---

[1]  1. Berjaoui wants to know how he "participated in the operation or management" of the enterprise, the two or more predicate acts he committed, what overt act he committed, and how the enterprise is separate and distinct from the pattern of racketeering activity, all erroneous and irrelevant inquiries, even if permitted, as demonstrated by the government's RICO discussion.

The only thing that defendant Berjaoui does not know at this point is the identity of the witnesses against him.  Even this will not be a surprise to him at trial, however.  All of the Jencks material and the identities of all witnesses will be voluntarily disclosed by the government at least one week before trial.  There is no possibility that defendant Berjaoui could fail to understand what he is charged with, when and with whom.  Therefore, a bill of particulars is not warranted.

C.  Motion to Strike Surplusage

Ali Berjaoui next moves to strike language that he terms surplusage.[2] Specifically, Berjaoui seeks to strike all references to the terrorist organization, Hizballah, as well as references to members of the conspiracy being Lebanese.  "A motion to strike surplusage should be granted only where it is clear that the language is irrelevant and prejudicial."  United States v. Neller, 229 F.3d 1154 (6th Cir. 2000)(unpublished)(copy attached).  "[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)."  United States v. Moss, 9 F.3d 543, 550 (6th Cir. 1993) quoted in Neller.  Thus, a prejudice determination plays no part in the surplusage analysis.

---

[2]  2. Defendant Mohamad Zeidan has filed a document joining this motion; defendants Majid Hammoud, Jihad Hammoud, and Fadi Hammoud have done so via a separate motion.

Neller, at 2.

The Indictment in this case specifically alleges that part of the glue which bound the conspirators together was their common language and heritage (Lebanese) as well as their "allegiance to and support of Hizballah." (Indictment at 9). The Indictment further alleges that "[p]ersons critical of Hizballah were confronted and expelled from the conspiracy . . . [and] [p]ortions of the profits made from the illegal enterprise were given to Hizballah." (Indictment at 14). Moreover, the Indictment alleges, some of the conspirators charged a "Resistance Tax," which was "a set amount over the black market price per carton of contraband cigarettes, which their customers were told would be going to Hizballah." (Id.). This evidence, in the plainest terms, will show the conspiracy's loyalties, motivations, prices charged, and disposition of its financial proceeds. It is hard to imagine categories of evidence that would be more relevant in the context of a RICO conspiracy prosecution. The evidence is not only legally relevant, but critical to the government's ability to establish the existence of the conspiracy, moreover.

If this were a mafia prosecution, the Indictment might well read that the conspirators were bound together by their Italian ancestry and by their "allegiance to and support of La Cosa Nostra." As the Sixth Circuit explained in assessing the alleged prejudice associated with the use of the words "Cosa Nostra" in another RICO

9

conspiracy prosecution from this district:

> Much of Tocco's pretrial argument focused on the stigma attached to the words "Cosa Nostra" and "Mafia" as those terms were used in the indictment charges. The charges in this case, however, would not differ materially from a charge that a particular defendant was allegedly in a particular group or gang, such as "Hell's Angels," or "White Citizen Council," or a subversive group such as an *international terrorist organization*. We would not deem such an indictment charge to constitute prejudicial error so long as the prosecution was prepared to come forward with proof to establish the existence of such a group, and that the particular defendant was associated with the alleged criminal enterprise or conspiracy.

Tocco, 200 F.3d at 412 n.4 (emphasis added). The government is in fact prepared to prove that Hizballah exists, that some of the conspirators were devoted to it, that a criticism of Hizballah could get someone expelled from the conspiracy, and that some of the conspiracy's profits, in the form of a tax, were donated to Hizballah.[3]

---

3. Ironically, the Indictment does not identify Ali Berjaoui as one of the conspirators who actively sought to support Hizballah. Undoubtedly, Berjaoui will argue that this shows he was not in agreement with the other conspirators in an effort to gain an acquittal or, if convicted, to argue that he was not as involved or as bad as other conspirators at sentencing.

D.  Motion for Discovery

Defendant Berjaoui next moves for additional discovery materials from the government, while acknowledging the receipt of thousands of pages of discovery and hundreds of recordings describing the full scope of the conspiracy.  Specifically, Berjaoui seeks to compel the pretrial disclosure of  Jencks Act statements.  The government is not legally required to disclose this information before the witness has testified at trial.  Title 18, United States Code, Section 3500(a) provides that, "[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."  Once again, Berjaoui cites no authority in support of his motion; and for good reason – there is none.  Under the established law of this circuit, the government could withhold all Jencks Act material until trial, even if it were exculpatory.  United States v. Mullins, 22 F.3d 1365, 1372 (6th Cir. 1994)("the Jencks Act overrides Brady").  However, the government believes that a disclosure of all Jencks Act statements and Brady information one week before trial is a reasonable accommodation that can be made in this case without endangering the safety of witnesses or creating a serious risk that there will be an obstruction of justice.

11

## Conclusion

For all of the foregoing reasons, Ali Berjaoui's motions to dismiss the indictment, for a bill of particulars, for discovery, and to strike surplusage should be denied.

Respectfully submitted,

STEPHEN J. MURPHY
United States Attorney

s/Kenneth R. Chadwell
Assistant United States Attorney
211 W. Fort St., Ste. 2001
Detroit, MI 48226
(313) 226-9698
E-Mail: ken.chadwell@usdoj.gov
Bar Code:  P39121

s/Barbara L. McQuade
Assistant United States Attorney
211 W. Fort St., Ste. 2001
Detroit, MI 48226
(313) 226-9725
E-Mail: barbara.mcquade@usdoj.gov
Bar Code:  P45423

Dated: December 11, 2006

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 13, 2006, I electronically filed the foregoing

document with the Clerk of the Court using the ECF System which will send

notification of such filing to the following:

**S. Allen Early, III**
sallenearly@sbcglobal.net

**Walter J. Piszczatowski**
wallyp@hsspc.com

**John R. Minock**
jminock@ic.net

**James Burdick**
ntglty2000@aol.com

s/ BARBARA L. McQUADE
Assistant U.S. Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226
Telephone: (313) 226-9698
E-Mail: barbara.mcquade@usdoj.gov
Bar No: P45423

Dated: December 11, 2006