**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

United States of America,

       Plaintiff,

vs.                                                         Criminal No. 03-80406
                                                            Hon. Gerald E. Rosen

D-9 Jihad Hammoud, a/k/a
"Jay Hammoud", et al.,

       Defendant.

_____/

## MOTION TO DISMISS COUNT I OF THE FIRST SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE AN OFFENSE

Defendants, Jay Hammoud through his Counsel, Hertz, Schram &  Saretsky, P.C., by Walter J. Piszczatowski; Majid Hammoud, through his counsel, James W. Burdick, P.C., by James W. Burdick; and Fadi Hammoud, through his Counsel, Brian M. Legghio, hereby respectfully move this Honorable Court to enter an Order Dismissing Count I of the First Superseding Indictment charging RICO conspiracy and violation of Title 18 U.S.C.§1962(d) because it fails to allege essential elements of the offense.  The facts and legal support for the Defendants' request is more fully set forth in the attached brief.

On or about November 20, 2006, counsel for Defendant, Jay Hammoud, consulted with United States Attorney, McQuade  concerning the Motion and the requested relief.

1

2

United States Attorney McQuade advised that she would not concur.

Respectfully submitted,

Hertz, Schram & Saretsky, P.C.
s/ Walter J. Piszczatowski (P27158)
Attorney for Defendant Jihad Hammoud
1760 S. Telegraph Rd., Suite 300
Bloomfield Hills, MI 48302
(248) 335-5000/(248) 335-3346 fax
wallyp@hsspc.com

James W. Burdick, P.C.
s/James W. Burdick (P11397)
Attorney for Defendant Majid Hammoud
1760 S. Telegraph Rd., Suite 300
Bloomfield Hills, MI 48302
(248) 335-5000/(248) 253-9620 fax
ntglty2000@aol.com

Law Offices of Brian M. Legghio
s/Brian M. Legghio (P29658)
Attorney for Defendant Fadi Hammoud
134 Market St.
Mount Clemens, MI 48043
(586) 493-7000/(586) 493-1177 fax
blegghio@legghiolaw.com

Dated:  April 27, 2007

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

United States of America,

       Plaintiff,

vs.                                                                                       Criminal No. 03-80406
                                                                                              Hon. Gerald E. Rosen

D-9 Jihad Hammoud, a/k/a
"Jay Hammoud", et al.,

       Defendant.

_____/


**BRIEF IN SUPPORT OF MOTION TO DISMISS COUNT I OF THE FIRST**
**SUPERSEDING INDICTMENT FOR FAILURE TO ALLEGE AN OFFENSE**

i

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................ iii

**Statement of Issue Presented** ....................................................................................... v

**Introduction** ................................................................................................................... 1

**Insufficiency of the Indictment** .................................................................................... 2

**RICO Elements** ............................................................................................................... 3

**The Enterprise Is Not The Pattern Of Racketeering Activity** ....................................... 3

**The Elements are Distinct** ............................................................................................. 6

**Structure vs Activity** ..................................................................................................... 8

**Conclusion** ................................................................................................................... 15

**CERTIFICATE OF SERVICE** ......................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

Allan  v. United States, 867 F.2d 969, 971 (6th Cir. 1989)...................................................... 3

Allington v Carpenter, 619 F Supp 474, 479 (CD Cal 1985) ............................................... 7

Chang v Chen, 80 F3d 1293, 1298 (CA9 1996).................................................................... 7

Hamling v. United States, 418 U.S. 87, 117, 41 LEd.2d 590 (1974) .................................. 2

Handeen v Lemaire, 112 F3d 1339, 1347-1349 (CA8 1997)............................................... 8

Jennings v Emry, 910 F2d 1434, 1440 (CA7 1990) ............................................................ 8

Stephens, Inc v Geldermann, Inc, 962 F2d 808 (8th Cir 1992) .......................................... 14

United States v ]Lemm [680 F2d 1193 (CA8 1982)............................................................. 14

United States v Bledsoe, 674 F2d 647, 664 (CA8 1982)...................................................... 7

United States v Chance, 306 F3d 356, 371 (CA6 2002) ...................................................... 8

United States v Fiel, 35 F3d 997, 1003-1004 (CA4 1994) ................................................... 8

United States v Neapolitan, 791 F2d 489, 500 (7th Cir. 1986) ............................................ 8

United States v Riccobene, 709 F2d 214, 222 (CA3 1983) ................................................. 13

United States v Salerno, 868 F.2d 524 (2nd Cir.)

   cert. den'd, 493 U.S. 811, 107 L.Ed.2d 24 (1989) ............................................................. 9

United States v Tillett, 763 F2d 628 (4th Cir 1985)............................................................. 13

United States v. Bledsoe, 674 F2d 647, 664 (8th Cir)

   cer't denied 459 U.S. 1040, 74 LEd2d 608 (1982) ........................................................... 6

United States v. Daniels, 973 F.2d 272 (4th Cir. 1992) ........................................................ 3

United States v. Pickett, 353 F.2d 62, 68 (D.C. Cir. 2004)................................................... 3

United States v. Sampson, 371 U.S. 75, 78-79, 9 L.Ed.2d 136 (1962)............................... 2

United States v. Sinito, 723 F.2d 1250, 1260 (6th Cir. 1983) .............................................. 3

United States v. Sturman, 951 F.2d 1466, 1478-79 (6th Cir. 1991),

   cert den. 405 U.S. 985, 119 L.Ed.2d 586 (1992) ............................................................. 2

United States v. Superior Growers Supply Inc., 982 F.2d 173, 177 (6th Cir. 1992)........... 2

United States v. Turkett, supra at 582-83 ................................................................ 6

United States v. Turkette, 452 U.S. 576; 69 L.Ed.2d 246 (1981)........................................ 3

**Statutes**

18 U.S.C. §1962(c) ............................................................................................................ 1

18 U.S.C. §1962(d) ............................................................................................................ 1

18 U.S.C. §2320 ................................................................................................................ 5

18 U.S.C. §2339(B)........................................................................................................ 12

18 U.S.C. §2342 ................................................................................................................ 5

Title 18 U.S.C. §2314 ........................................................................................................ 6

Title 18 U.S.C. §2315 ........................................................................................................ 5

Title 18 United States Code Section 2342 ........................................................................ 5

**Other Authorities**

U.S. Const. Amend. V ........................................................................................................ 2

U.S. Const. Amend. VI ........................................................................................................ 2

**Rules**

FRCP 7(c).......................................................................................................................... 2

**<u>Statement of Issue Presented</u>:**

Whether a conspiracy to commit RICO is sufficiently pled in the instant superseding indictment?

**<u>Introduction</u>**

Defendants Majid Hammoud, Jay Hammoud and Fadi Hammoud are three of 19 co-defendants, along with three identified non-defendant co-conspirators and an unspecified number of others, both known and unknown to the grand jury, charged in a First Superseding Indictment with a single count of conspiracy to violate Racketeer Influenced and Corrupt Organizations Act ("RICO") in violation of 18 U.S.C. §1962(d)[1]. All are alleged to have been "persons employed by and associated with the enterprise" who conspired with one another, in violation of 18 U.S.C. §1962(c), to conduct the affairs of the enterprise through a pattern of racketeering activity.   (Superseding Indictment ¶16)

The problem with the charge is the "enterprise" that all defendants are alleged to have been associated with and whose affairs they allegedly conspired to further, is itself illusory and insufficiently pled.   Although a section in the indictment describes something the government labels the "Hammoud Enterprise," the description is nothing more than a summary of numerous criminal acts allegedly engaged in by various defendants.   Those same acts are then listed again as the predicate acts comprising the "pattern of racketeering activity," and yet again, are set forth as the conduct constituting the "Manner and Means of a Conspiracy" itself.   The enterprise and the alleged pattern of racketeering activity cannot have a singular existence.   There must be some structure which distinguishes an enterprise from a mere conspiracy, and since there is none, the Defendants cannot be convicted of conspiring to further the affairs of a non-existent RICO "enterprise."   In short, the indictment is defective and must be dismissed.

---

[1] The only other count in the indictment charges a single defendant Hassan Ali AlMoosaui with smuggling, in violation of 18 U.S.C. §545.

1

## Insufficiency of the Indictment

The general principles governing motions to dismiss the indictment are well settled.   Motions to dismiss test whether the indictment sufficiently sets forth the charged offense against the defendant.  See United States v. Sampson, 371 U.S. 75, 78-79, 9 L.Ed.2d 136 (1962). Under the Notice Clause of the Sixth Amendment, a criminal defendant has the right "to be informed of the nature and cause of the accusation" against him.  U.S. Const. Amend. VI.  In addition, the Indictment Clause of the Fifth Amendment requires that a defendant be charged with only those charges issued by the grand jury.  U.S. Const. Amend. V.

The Supreme Court has instructed that the indictment satisfies these constitutional requirements "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second enables him to plead an acquittal or conviction and bar a future prosecution for the same offense." Hamling v. United States, 418 U.S. 87, 117, 41 LEd.2d 590 (1974); United States v. Sturman, 951 F.2d 1466, 1478-79 (6th Cir. 1991), cert den. 405 U.S. 985, 119 L.Ed.2d 586 (1992)  The starting point in assessing the sufficiency of an indictment is FRCP 7(c), which states that an indictment must contain "a plain, concise and definite written statement of the essential facts constituting the offense charged."   To be legally sufficient, "the indictment must assert facts which in law constitute an offense; and which, if proved, would establish *prima facie* the defendant's commission of that crime." United States v. Superior Growers Supply Inc., 982 F.2d 173, 177 (6th Cir. 1992). Courts employ a common sense construction in determining whether an indictment sufficiently informs the defendant of an offense.  Allan  v. United States, 867 F.2d 969,

2

971 (6th Cir. 1989).  It is clear, however, that an indictment that fails to properly allege and properly set forth each essential element of the offense is plainly insufficient and must be dismissed.  See e.g., United States v. Pickett, 353 F.2d 62, 68 (D.C. Cir. 2004); United States v. Daniels, 973 F.2d 272 (4th Cir. 1992).

### RICO Elements

The essential elements of a RICO prosecution are:  (1) the existence of an enterprise; (2) the defendant was associated with the enterprise; (3) the defendant participated in the conduct of the enterprise's affairs; and (4) the defendant participated in the affairs of the enterprise through a pattern of racketeering activity.  See, United States v. Sinito, 723 F.2d 1250, 1260 (6th Cir. 1983).

### The Enterprise Is Not The Pattern Of Racketeering Activity

In United States v. Turkette, 452 U.S. 576; 69 L.Ed.2d 246 (1981), the United States Supreme Court explicitly stated that the existence of an "enterprise" is a separate element from the existence of a "pattern of racketeering activity.  Id. 452 U.S. at 583.  The court described the interplay between the "enterprise" and a "pattern of racketeering" as follows:

> In order to secure a conviction under RICO, the government must prove *both* the existence of an enterprise and the connected "pattern of racketeering activity."  The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct.  The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute.  The former is proved by evidence of an ongoing organization, formal or informal, by evidence that the various associates function as a continuing unit.  The latter is provide by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise.  While proof used to establish these separate elements may in particular cases coalesce, proof of one does not

3

> necessarily establish the other.  The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages.  The existence of an enterprise at all times remains a separate element which must be proved by the government.  [Id. (emphasis added}.]

Here, the "enterprise" and "pattern of racketeering," as described in the Superseding Indictment, are one and the same.  The indictment devotes seven pages to a description of what the government labels "The Hammoud Enterprise."  The moniker is one of the government's own creation, presumptively bestowed because defendant Imad Hammoud is described as a "central conduit of virtually every aspect of the enterprise's unlawful activities." [2]  (¶4A, p.9)  The pleading alleges that the 18 named defendants and the two individuals not named as defendants as well as others, both known and unknown to the grand jury, were "associated in fact" and constituted an "enterprise" which constituted an "ongoing organization whose members functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise." (¶2. p.8)  The indictment alleges that the "enterprise" operated from six different countries perpetrating crimes in 10 different states of the United States, and was "bound by common heritage (Lebanese), common language (Arabic),  allegiance to Hezbollah blood relations and a common purpose generating large sums of cash illegally."  (¶3, p. 9)  The government then attempts to set out, in paragraph 4, to describe the enterprise's structure.  What it does instead is to merely list a number of different criminal conspiratorial undertakings.  The same criminal undertakings are then used to

---

[2] He is not, however, identified as an organizer, leader or manager of an association with a hierarchical structure but simply a "conduit", or more importantly, the only individual common to the various crimes alleged to form both the pattern of racketeering activity and the "enterprise" or, in other words, a person central to a hub and wheel (spoke) type conspiracy.

4

describe both the "pattern of racketeering activity" as well as the "Means and Manner" of conducting the conspiracy.

Paragraphs 4A, B and C describe generally, the involvement of 12 of the defendants and three non-defendants in a "contraband cigarette trafficking organization". In ¶5a, cigarette trafficking is listed as one of the multiple acts that make up the "pattern of racketeering activity" i.e. "Acts indictable under 18 U.S.C. §2342 (relating to contraband cigarette trafficking)." In ¶6, the same conduct, "indictable under Title 18 United States Code Section 2342", which was just used to identify the structure of the "enterprise" and to establish the "pattern of racketeering," is described as one of the "Manner and Means" of carrying out the racketeering conspiracy.

Likewise, paragraph 4D states that, as part of the structure of the "enterprise" eight of the co-defendants were involved in conduct procuring illegitimate cigarette tax stamps which were applied to contraband cigarettes for resale within the state of Michigan. That same activity is listed in paragraph 5B, as additional criminality serving as predicate acts for the pattern of racketeering activity: "Acts indictable under Title 18 U.S.C. §2315 (relating to the possession of counterfeit state cigarette tax stamps)." Again, the Manner and Means section of the Indictment, ¶7 recites the same conduct.

In ¶4E, the indictment sets forth, as additional structure to the "enterprise" the involvement of six co-defendants in the trafficking of counterfeit and stolen goods including Viagra, ZigZag cigarette papers, cigarettes, toilet paper and Simalac infant formula. The very same alleged criminal undertakings serve as additional predicate acts of racketeering activity in ¶¶5C and D; "Acts indictable under 18 U.S.C. §2320 (relating to trafficking and stolen goods bearing counterfeit marks)" and "Title 18 U.S.C.

5

§2314 (relating to interstate transportation and possession of stolen property)."  The conduct and offense are identified again in ¶¶8 and 9 under the Manner and Means section.  The indictment thus has the same series of criminal offenses serving triple duty constituting: 1) the "enterprise"; 2) the "pattern of racketeering activity"; and, 3) the "manner and means" of carrying out the conspiracy.

The enterprise and the alleged pattern of racketeering activity cannot have a singular existence!  See United States v. Turkett, supra at 582-83.  An enterprise cannot simply be the undertaking or commission of the acts of racketeering, neither can it be the minimal association which surrounds or is associated with such acts.  United States v. Bledsoe, 674 F2d 647, 664 (8th Cir) cer't denied 459 U.S. 1040, 74 LEd2d 608 (1982).

### The Elements are Distinct

While in Turkette, the Supreme Court acknowledged that proof for both the enterprise and the pattern of racketeering activity "may in particular cases, coalesce," it does not undercut Defendant's position, as prosecutors do not have *carte blanche* to rely on bare evidence of racketeering activity alone to establish both an enterprise and a pattern of racketeering.  Turkette stands for the simple proposition that for evidentiary purposes proof of the two elements sometimes may overlap – it did not, however, do away with the need to properly allege and prove the separate and distinct element of an "enterprise".  Turkette is explicit in its holding that the **two** elements – "enterprise" **and** the "pattern of racketeering activity" – are **separate**: To prove an "enterprise," the evidence must show an ongoing organization, formal or informal, and must establish that the various associates existed as a continuing unit.  To establish a "pattern of

6

racketeering activity," the evidence must show that the participants in the enterprise committed the prerequisite number of racketeering acts.  Turkette, 452 U.S. 583.

If mere proof of the pattern of racketeering activity is sufficient to prove the existence of an enterprise, then the enterprise element, which is central to the statute, is superfluous because, under this reading, "every 'pattern of racketeering activity' becomes an 'enterprise' whose affairs are conducted through the pattern of racketeering."  Chang v Chen, 80 F3d 1293, 1298 (CA9 1996) (quoting Allington v Carpenter, 619 F Supp 474, 479 (CD Cal 1985)).  Such an interpretation would shift the focus of RICO from organized crime by "ignoring 'the organizational nexus at the heart of the RICO scheme.'"  Id. (quoting Allington, supra at 479).  And, such an approach would allow mere proof of "a conspiracy to establish the enterprise element."  Id. at 1299 (quoting Allington, supra at 479).  "A comparison of the severe penalties authorized by RICO with those for conspiracy indicates that the Act must have been directed at participation in enterprises consisting of more than simple conspiracies to perpetrate the predicate acts of racketeering."  United States v Bledsoe, 674 F2d 647, 664 (CA8 1982).

RICO was not enacted to punish simple conspiracies such as the one pled here:

> RICO was not designed to serve as a recidivist statute, imposing heavier sentences for crimes which are already punishable under other statutes. **The Act was not intended to be a catchall reaching all concerted action of two or more criminals involving two or more of the designated crimes.** [Bledsoe, supra at 659 (emphasis added).]

To avoid the incorrect application of the RICO statute and others like it to criminal activities that never, never were intended to be included within their scope, [t]he government must establish the conspiracy and the enterprise and, in those cases where the enterprise is alleged to be an illegal association-in-fact, proof of one is not sufficient

7

to allow <u>an</u> inference <u>of</u> the existence <u>of</u> the other. <u>United States</u> v <u>Neapolitan</u>, 791 F2d 489, 500 (7th Cir. 1986).  The "enterprise" is the instrument through which illegal activity is conducted.  See <u>United States</u> v <u>Chance</u>, 306 F3d 356, 371 (CA6 2002).  A RICO enterprise must exhibit three separate and basic characteristics:

(1)     A common or shared purpose;
(2)     Some continuity of structure and personnel; and
(3)     an ascertainable structure distinct from that in a
          pattern of racketeering.

<u>United States</u> v <u>Fiel</u>, 35 F3d 997, 1003-1004 (CA4 1994); <u>Handeen</u> v <u>Lemaire</u>, 112 F3d 1339, 1347-1349 (CA8 1997).

In light of the necessary characteristics an "enterprise" must exhibit, it can be described only as a **thing**, not a series of acts or conspiracies:

> An enterprise is distinct, separate, and apart from a pattern of racketeering activity: although a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does. [<u>Jennings</u> v <u>Emry</u>, 910 F2d 1434, 1440 (CA7 1990).]

### Structure vs Activity

Pursuant to fundamental RICO law, "[a] conspiracy … is not an enterprise for purposes of RICO."  <u>Chang</u>, <u>supra</u> at 1300.  "[W]hile the hallmark of conspiracy is agreement, the central element of an enterprise is structure."  <u>Neapolitan</u>, <u>supra</u> at 499-500.  An enterprise is the superstructure upon which the players build the predicate acts of racketeering.  Thus, the enterprise must exist beyond the predicate acts.  To determine whether an alleged enterprise has "an ascertainable structure distinct from that inherent in a pattern of racketeering," **it must be determined whether "the enterprise would still exist were the predicate acts removed from the equation."** <u>Handeen</u>, <u>supra</u> at 1352.  Here, as pled, it clearly would not.

8

Therefore, this Court must look beyond the predicate acts to determine if the indictment properly pleads an actual enterprise apart from the alleged acts of racketeering.  Obviously, all criminal acts involving more than one individual, such as a conspiracy, will necessarily involve **some** organization, and **some** interaction between the co-conspirators.  Stated otherwise,

> Any two criminal acts will necessarily be surrounded by some degree of organization and no two individuals will ever jointly perpetrate a crime without some degree of association apart from the commission of the crime itself.  [Bledsoe, supra at 664.]

That said, the relevant question for this Court is whether the enterprise as alleged has the necessary degree of association; i.e., **more** than that which was necessary to commit the predicate acts.

Courts take a common-sense approach to this essential question, looking for characteristics such as 1) a hierarchy; 2) a system of decision-making; 3) profit splitting; 4) joint equipment purchases or joint reinvestment in the enterprise; and 5) organization existing between "deals."  Groups that exhibit these characteristics are "enterprises;" those that do not exhibit these qualities are not.  "The command system of a Mafia family is an example of this type of structure as is the hierarchy, planning, and division of profits within a prostitution ring."  Id. at 665.  The structure of a mafia type enterprise was pled and demonstrated in United States v Salerno, 868 F.2d 524 (2nd Cir.) cert. den'd, 493 U.S. 811, 107 L.Ed.2d 24 (1989). The RICO enterprise alleged in the indictment was known as the "Commission" of LaCosa Nostra.  There, the government presented an enterprise that existed to further several racketeering schemes but was not simply defined by the schemes themselves:

9

> The indictment alleged, and substantial evidence at trial established, that the Commission has for sometime acted as the ultimate ruling body over the five LaCosa Nostra families in New York city and affiliated families in other cities.  The general purpose of the Commission is to regulate and facilitate the relationships between and among the several LaCosa Nostra families and more specifically to promote and coordinate joint ventures of a criminal nature involving the families, to resolve disputes among the families, to extend a formal recognition to "bosses" of the families and, on occasion, to resolve leadership disputes within a family, to approve the initiation or "making" of new members of the families, and to establish rules governing the families, officers and members of LaCosa Nostra.  Salerno at 528.

Rather than define the hierarchy or the organizational structure of the "Hammoud Enterprise" the indictment simply alleges that it was vast; it operated from six different countries perpetrating crimes in 11 states.  (¶4 p.9)  How it operated; who managed what aspects; the chain of command; how it was financed; and how profits were distributed, all issues that bear on the existence of an "enterprise" are sorely lacking. The Indictment fails to point to any continuity of structure and personnel or to identify a decision-making hierarchy that coordinated the several different criminal schemes.

Instead, the indictment merely offers that the enterprise "was bound together by a common heritage (Lebanese) and a common language (Arabic)", an allegation that actually describes millions of individuals throughout the world.  Those characteristics, whether common amongst some, few or all of the alleged members, do not, however, identify an enterprise -- the "thing" that must exist.

Other similar elements shared by some of the co-conspirators are alleged to be "allegiance to and support of Hezbollah;" as well as "blood relations."  Blood relations are presumptively the Hammoud brothers, four of whom are named as defendants in this indictment.  The indictment alleges that all brothers participated in the trafficking of

10

contraband cigarettes; and that Imad, alone, was involved in the offenses relating to trafficking and goods bearing counterfeit marks and interstate transportation of stolen property.   The fact that the brothers are alleged to have had differing levels of participation in different criminal activity does nothing to illustrate or define an organizational structure of the alleged enterprise.   "Blood relations" may define the relationship of the brothers, but it does not say anything about the (larger) "enterprise" they were supposedly associated with.

The indictment's contention that the "enterprise" was bound together by "an allegiance to and support of Hezbollah" is utterly belied by a further reading of the indictment which demonstrates that only a handful of named defendants, and Hassan Makki, an unnamed defendant, were identified as the "avid" supporters of the Hezbollah organization.[3]   In ¶4F the indictment generally alleges without any specifics as to the instant defendants that portions of the profits made from the illegal enterprise were given to Hezbollah inferring that the "enterprise" had as one of its objectives financial support of the terrorist organization.   Does the fact that someone received income from General Motors and then makes a contribution to Hezbollah raise the inference that other General Motors employees had a similar intent or interest or that General Motors had as one of its objectives to provide material support to a terrorist organization?   Obviously not, yet a similar logic is employed in the present indictment.

Paragraph 4F goes on to explain that conspirators (individually) "vocally contended" for Hezbollah and celebrated its operations.   Imad Hammoud and Hassan

---

[3] Further, in none of the Rule 11's of any co-defendants who have agreed to guilty pleas, is there a mention of or a single word suggesting any support for, or relationship to, any alleged terrorist organization.

Makki, an uncharged defendant, are alleged to have personally charged a "resistance tax" as part of their criminal activity, which they purportedly contributed (or at least told customers they were going to contribute) to Hezbollah.  What is readily apparent is that the government sought to weave the personal support of Hezbollah by a few of the individual defendants into the fabric of its "enterprise."[4]  The non-technical, common sense reading of the indictment, however, makes it clear that "the allegiance to Hezbollah" was the individual choice of two individuals identified in the indictment, not an objective or shared intent by the instant members of the alleged enterprise.  It is unfathomable that the government would bring an indictment alleging that a criminal enterprise existed for the purpose of funding a terrorist organization, yet not even charge a substantive violation of any of the statutes specifically aimed at anyone who supposedly "knowingly provided material support or resources to a foreign terrorist organization, or attempts or conspires to do so".  See, eg.18 U.S.C. §2339(B).

As is more fully explained in defendants' Joint Motion and Memorandum to Strike Prejudicial Surplusage, the allegations relating to affiliation with Hezbollah were gratuitously inserted into the indictment to unduly prejudice these defendants.  The government does not seek to charge even one, let alone all of the defendants with crimes relating to the support of terrorist organizations, but instead to taint all of the defendants that share a common heritage and/or language with the few who are alleged to have maintained an actual connection or affiliation with the organization.

---

[4] The government in its Brief in Response to Defendant Majid Hammoud, Jay Hammoud and Fadi Hammoud's Joint Motion to Strike Prejudicial Surplusage virtually concedes that the members of the alleged enterprise were not  bound by allegiance to Hezbollah, but that it was merely a preoccupation of some alleged conspirators; ". . . the government is, only prepared to prove that Hezbollah exists, and that *some* of the conspirators were devoted to it . . ." (emphasis added) (United State's Brief in Response to Defendant Majid Hammoud, Jay Hammoud and Fadi Hammoud's joint motion to strike prejudicial surplusage p. 10)

An example of the kind of structure necessary to establish an "enterprise" is found in United States v Tillett, 763 F2d 628 (4th Cir 1985).  In Tillett, the defendant was charged with a RICO violation based on predicate acts of marijuana smuggling.  The court found sufficient evidence to prove a structure *apart from* the smuggling and, thus, found that the evidence was sufficient to prove the existence of an "enterprise" for the purposes of RICO, stating:

> We conclude that the evidence was adequate to show that the organization had an existence beyond that which was necessary to commit the predicate crimes.  The evidence showed that the organization existed in the intervals between actual importations. For example, a seafood restaurant was established to serve as a legitimate business front for the smuggling operation. Trucks and equipment were purchased and, significantly, a corporation was formed for the purpose of purchasing *Miss Michelle*[, which was the boat the defendants used to smuggle marijuana]. [Id. at 632 (citations omitted).]

In Chang v Chen, supra, the court utilizing similar factors, determined that there was not sufficient evidence of an enterprise.  First, there was no enterprise because the defendants acted autonomously:

> Appellants have not alleged a structure to the organization beyond that which was inherent in the alleged acts of racketeering activity. The second amended complaint did not allege the existence of a system of authority that guided the operation of the alleged enterprise. Although each Appellee performed the same specific functions in each transaction, there was no decision-making apparatus that limited or guided Appellees in the performance of their respective duties.  Each Appellee conducted his or her role in the alleged fraudulent real estate transactions autonomously. [Id. at 1300 (citation omitted).]

See also United States v Riccobene, 709 F2d 214, 222 (CA3 1983) ("[T]he government must show that some sort of structure exists within the group for the making of decisions, whether it be hierarchical or consensual.  There must be some mechanism

13

for controlling and directing the affairs of the group on an on-going, rather than an ad hoc, basis.").

In Chang, (as here), the co-defendants had no scheme for splitting profits:

> [T]here was no allegation that Appellees utilized a structure separate and apart from the predicate acts to distribute the proceeds of the transactions. The proceeds were allocated to Appellees in a manner consistent with ordinary real estate transactions. [Id. at 1300.]

Finally, the co-defendants in Chang did not purchase any equipment to facilitate their crimes:

> Appellees did not use the profits to purchase equipment to allow them to commit the predicate acts. [Id.]

In Stephens, Inc v Geldermann, Inc, 962 F2d 808 (8th Cir 1992), there was evidence of ongoing and continuous contacts between the co-conspirators, which gave the illusion of structure. On closer analysis, however, the court found this association was necessary to the commission of the predicate acts of fraud only and thus could not support the finding of an enterprise. The court described the deficiency as follows:

> Unlike the arson ring in [United States v ]Lemm [680 F2d 1193 (CA8 1982)], which was united and defined by activities independent of the predicate acts of mail fraud, the enterprise here was linked and essentially defined by the daily interstate telephone calls and confirmation mailings between Little Rock and Chicago. These acts, moreover, were essential to Markle's scheme to defraud Stephens. **Remove these predicate acts of racketeering, and the alleged association-in-fact evaporates.** [Stephens, supra at 816 (emphasis added).]

If one analyzes the present Indictment in the same manner, it is apparent that it fails to plead the existence of a criminal enterprise – a structured, organized "thing" – apart from the activity, the alleged criminal acts themselves.

Rather than pleading an ascertainable structure distinct from the alleged pattern of racketeering, the "enterprise" in this indictment is simply defined by the same series of predicate acts alleged to constitute the pattern of racketeering. What the indictment

14

alleges is a series of discrete and independent criminal offenses or conspiracies.  There is no allegation of a viable, established, on-going, mutual endeavor on behalf of or through an enterprise because no enterprise existed.  The court simply needs  to ask one simple question:   would "the enterprise . . . still exist were the predicate acts removed from the equation?"  (See, Handeen, supra 112 F.3d 1352)  The answer in this case can only be a resounding "no."  The only thing the indictment alleges is a series of predicate acts.   When they are excised from the equation, nothing remains – no structure, no organization, no framework, nothing resembling a true RICO "enterprise."

## Conclusion

For these reasons, it is respectfully requested that Count I of the Second Superseding Indictment be dismissed for failure to allege an "enterprise," an indispensable element of the crime charged.


Respectfully submitted,

Hertz, Schram & Saretsky, P.C.
s/ Walter J. Piszczatowski (P27158)
Attorney for Defendant Jihad Hammoud
1760 S. Telegraph Rd., Suite 300
Bloomfield Hills, MI 48302
(248) 335-5000/(248) 335-3346 fax
wallyp@hsspc.com

James W. Burdick, P.C.
s/James W. Burdick (P11397)
Attorney for DefendantMajid Hammoud
1760 S. Telegraph Rd., Suite 300
Bloomfield Hills, MI 48302
(248) 335-5000/(248) 253-9620 fax
ntglty2000@aol.com

Law Offices of Brian M. Legghio
s/Brian M. Legghio (P29658)
Attorney for Defendant Fadi Hammoud
134 Market St.
Mount Clemens, MI 48043
(586) 493-7000/(586) 493-1177 fax
blegghio@legghiolaw.com

Dated:  April 27, 2007

15

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:   Eric E. Biretta, James W. Burdick, Kenneth R. Chadwell, Thomas W. Cranmer, Mark B. Dickow, S. Allen Early, III, Federal Defendant, Neil H. Fink, Robert E. Forrest, Hassan A. Huraibi, Samer N. Jadallah, Robert M Kalec, Joel J. Kirkpatrick, Brian M. Legghio, Matthew F. Leitman, Barbara L. McQuade, John R. Minock, Clyde B. Pritchard, Michael A. Rataj, Salem F. Samaan, Sanford A. Schulman, David S. Steingold, Kimberly W. Stout, and James C. Thomas.

Hertz, Schram & Saretsky, P.C.
s/Walter J. Piszczatowski (P27158)
Attorney for Defendant Jihad Hammoud
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
(248) 335-5000/(248) 335-3346 fax
wallyp@hsspc.com

S:\Staff\Steiniger, Valerie\Wjp\Hammoud, Jay\MOTIONS\Motion and BIS to Dismiss Count I.doc

16