**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

                      **Plaintiff,**                          **Case # 03-80406**

**-vs-**                                         **HON. GERALD ROSEN**

**ADEL ISAK,**

                      **Defendant.**
_____/

**SENTENCING MEMORANDUM FOR**
**DEFENDANT ISAK**

**STATEMENT OF FACTS**

On March 27, 2009, Adel Isak pled guilty to conspiracy to violate the Racketeer
Influenced and Corrupt Organizations (RICO) Act pursuant to a Rule 11 plea
agreement.  The Rule 11 agreement provided for a sentencing guideline range of 15-21 months
based on a total offense level of 14 and a criminal history category of I.  In computing the
sentencing guidelines, the government agreed that Mr. Isak was a minor participant in this
offense and should, therefore, receive a 2-point reduction in his total offense level pursuant to
§3B1.2(d)  The Probation Department concurred with the parties with respect to the advisory
guideline range.

The Rule 11 agreement did not contain an agreement as to the amount of restitution,
leaving that subject to the Court's determination absent a subsequent agreement between the
parties.  The government has proposed that restitution be set at $50,000.  The Probation
Department concurs with the government's recommendation.  Recognizing Mr. Isak's financial
situation, however, the Probation Department indicates that "it does appear that the defendant

-1-

would have the ability to make monthly nominal payments toward restitution."[1]

The purpose of this memorandum is to request that the Court impose a sentence below the advisory guideline range, and consider a non-prison term for Mr. Isak of either home confinement or placement in a community corrections center.

## DISCUSSION

### A. §3553(a) factors

The defense contends that factors exist under 18 USC 3553(a) that warrant an imposition of a sentence beneath the advisory guideline range.  With respect to the circumstances of the offense, while there is no doubt that Mr. Isak intentionally participated in the charged offense, it is equally clear that he was a minor participant seeking only to make a few extra dollars rather than one of the masterminds of the enterprise.   Additionally, Mr. Isak's participation in the conspiracy appears to have ended some time in 2002, two years before the conspiracy was completed.

The history and characteristics of Mr. Isak also suggest that factors exist to justify a variance from the guidelines.  Mr. Isak is a native Iraqi who became a naturalized U.S. citizen in 1999.  He comes from a large and supportive family, all of whom are gainfully employed.[2]  He owns two businesses, the primary one being a snack delivery service operated out of his home. He earns a solid income and pays his taxes.

The Court also has the right to take into account Mr. Isak's role in the offense.  While he has already received some benefit under the guidelines from being deemed a minor participant, the Court may also consider that minor role in determining whether the interests of justice will be served by sentencing Mr. Isak within the guideline range.

Finally, the Court may also consider that, as indicated in the "Offense Conduct" section

---

[1] Page 16, §58

[2] Pre-sentence report, §45

of the pre-sentence report, Mr. Isak's involvement in this conspiracy essentially ended in May, 2002, over seven years ago.  Since that time, he has opened new businesses, had no further contact with law enforcement, and been a solid citizen.  Therefore, taking all the facts and circumstances in the case into account, this Court would be well justified in imposing a sentence beneath the advisory guideline range.

### B.  Cooperation

In May, 2006, Mr. Isak was interviewed by the investigating agents in the presence of his prior lawyer.  During the interview, Mr. Isak acknowledged his participation in the selling of contraband cigarettes.  He described his initial contacts with Imad Hammoud and discussed how he became involved in Mr. Hammoud's illegal business.  Mr. Isak also discussed his involvement in obtaining cigarette tax stamps that were requested by Mr. Hammoud, and admitted to being in possession of the tax stamps when he was stopped at the Canadian border.  He also acknowledged that he had talked with another individual about obtaining contraband infant formula, but stated that he never followed through with it.

Although Mr. Isak did not provide enough cooperation to merit the filing of a §5K1.1 motion by the government, the Court has the right to consider the fact that he agreed to be debriefed early in the proceedings in determining a fair sentence in the case.

### C.  Sentencing options

The Court is very familiar with the options available to it since Booker and Gall were decided by the Supreme Court.  The guidelines, although relevant, are only advisory.  It is permissible to consider factors outside the guidelines in determining a proper sentence.  And, most importantly, the opinion of the trial judge who is, after all, the person most familiar with both the facts and circumstances of the case and the individuals involved, has been restored to its rightful place.

Those sentencing options include a number of conditions that restrict the movement of the defendant without sending him to prison.  The Court may sentence Mr. Isak to a community

corrections center or place him on home confinement.  Both of those options would allow Mr. Isak to maintain his employment, pay his bills and his taxes, and continue to be a productive citizen.  The question for the Court, of course, is this: Do the interests of justice and the community demand that Mr. Isak be sentenced to prison or do the other sentencing options make more sense?

In answering that question, the Court must decide whether a community corrections center or home confinement represent sufficient punishment for Mr. Isak's conduct in this case. Regardless of the sentence, Mr. Isak has already been significantly punished for his behavior. He has a federal felony conviction that will follow him for the rest of his life.  He will be paying a significant amount of restitution, far more than he earned for his part in this venture, and will in all likelihood be paying it for a fairly long time.  Therefore, a community corrections center or home confinement would in fact be sufficient punishment to satisfy the interests of justice.

## CONCLUSION

Wherefore, for the reasons stated above, Defendant Isak requests that this Court depart from the advisory guideline range, and sentence him to a non-prison sentence.

s/ Steven Fishman
Steven Fishman (P23049)
Attorney for Defendant Isak
615 Griswold, Suite #1125
Detroit, MI 48226
(313)962-4090
e-mail: sfish66@yahoo.com

Dated: July 6, 2009

-4-

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 6, 2009, I served a copy of the attached motion upon Barbara McQuade and Kenneth Chadwell, Assistant United States Attorneys, by filing same electronically.

<u>s/ Steven Fishman</u>
Steven Fishman (P23049)
Attorney for Defendant Isak
615 Griswold, Suite #1125
Detroit, MI 48226
(313) 962-4090
e-mail: sfish66@yahoo.com